# WILLIAM J. CAMPBELL *et al.*

## *v.*

# GEORGE W. CAMPBELL *et al.*

*Filed at Springfield November 2, 1891.*

1. CONTEST OF WILL—*testamentary capacity.* The inquiry as to the mental capacity of one to make a valid will should be made in view of the circumstances of the case as shown by the evidence, and a determination reached by a consideration of the nature and character of the business about to be performed in making the will. The testator must have had, at the time, an intelligent comprehension of the surrounding circumstances, and of their direct consequences and probable results. He must have been able not only to understand that he was by will disposing of his property, but he must also have had capacity sufficient to comprehend the extent of the property devised, and the nature of the claims of others upon him.

2. SAME—*mistakes in description of lands—effect of.* The fact that mistakes are made in the description of lands devised, and in other respects, is a circumstance that may be considered in connection with the other evidence on the issue of the validity of the will; but such circumstance is by no means conclusive.

3. Such mistakes will not render the will void, if it appears that the testator, at the time of its execution, had sufficient mental capacity to make a will, and that he then acted under no constraint or compulsion. Contestants of a will can not urge the rights of devisees whose lands are mis-described, who are not complaining.

4. SAME—*burden of proof.* On the contest of the validity of a will, the burden of proof is upon the defendants to show, by a preponderance of evidence, that the will is attested by two or more witnesses, two of whom must testify that they saw the testator sign the same in their presence, or that he acknowledged the will to be his act and deed, and that they signed the same as witnesses thereto, at his request. That proof made, the burden is then upon the contestants to impeach the will.

5. SAME—*acts to influence testator—admissibility of declarations of witnesses.* On bill to contest a will, proof of the declarations of one called as a witness, of his acts done to influence the testator to make the will, is not admissible to affect the rights of those claiming under the will.

6. On the trial of an issue as to the validity of a will, the statements of a witness relating either to his opinion of the mental condition of

the testator at the time of making the will, or to his own fraudulent acts to procure the making of the will, are inadmissible as against the right of others having, not a joint, but a common interest, only, with himself, in the subject matter claimed to be affected by the declarations.

7. IMPEACHMENT OF WITNESS—*admissibility of stenographic notes.* Where the attention of a witness is specifically called to parts of his former testimony in a case, contradictory of or inconsistent with his present testimony, and given an opportunity of explaining the same, his former statements may be shown by the stenographic report of his evidence, when verified, only so far as it is contradictory of his testimony on the second trial. Other parts of his former testimony to which his attention is not called can not be shown in contradiction of his testimony on the second trial.

8. PRACTICE IN SUPREME COURT—*errors not affecting party complaining.* A party can not urge an erroneous ruling of the court below affecting only the interest of others who do not complain.

.APPEAL from the Circuit Court of Jersey county; the Hon. GEORGE W. HERDMAN, Judge, presiding.

Mr. WILLIAM BROWN, and Mr. J. S. CARR, for the appellants.

Mr. T. S. CHAPMAN, Mr. A. M. SLATEN, Mr. J. G. HENDERSON, and Mr. O. B. HAMILTON, for the appellees.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

This case is now before us a second time for review. It will be found reported, when first here, as *Campbell et al.* v. *Campbell et al.* 130 Ill. 466. As shown by that report, it is a bill in chancery by certain persons claiming as heirs-at-law of one Joshua Neely, late of Jersey county, deceased, against certain other persons claiming to be legatees under the last will and testament of said Neely, and its purpose is to set aside what purports to be such last will and testament, upon the grounds of want of testamentary capacity of the testator, and that the supposed will was executed under the undue influence of Charles W. Enos and George W. Campbell. Upon the second trial in the circuit court, had after the cause was remanded to

that court for such trial, the jury found, as the jury did upon the first trial, in favor of the validity of the will, and the court thereupon decreed in accordance with that verdict. The several grounds urged in argument for a reversal of the decree will be briefly considered, and, as nearly as they conveniently may, in the order of their presentation in argument.

*First*—Appellants offered to read in evidence the stenographic report of the testimony given by Brock and Enos, respectively, upon the former trial. The court ruled that appellants might, where they had, during the examination of either of these witnesses, called his attention to his former testimony, and obtained his answer as to what it was, read such parts of the stenographic report of it (its accuracy being proved,) as they claimed were contradictory of his answers, and refused to allow the balance of the report to be read. This, in our opinion, was entirely correct. The witness might be contradicted by evidence of his former statements under oath, but he was entitled to have his attention first called to those statements specifically, and to make such explanation in regard to them as he could. (1 Greenleaf on Evidence, sec. 462; *Regnier* v. *Cabot*, 2 Gilm. 34; *Richardson* v. *Kelly*, 85 Ill. 491.) And on the question of contradiction, it is manifest that no more of the report of the former testimony should be read than is involved in the claimed contradiction. There is no ground, of which we are aware, upon which appellants were entitled to have the balance of the report read to the jury. The witnesses were present and fully examined. Appellants had a right to, and we must presume did, on cross-examination, bring to their attention every statement in their former testimony claimed to be contradictory of the testimony then given, and if they desired to examine them as to other matters, they should have made them their own witnesses. No case is within our knowledge where the former testimony of a witness who is present and testifies in the case is allowed to be given in evidence except for the purpose of contradiction, and

then it must be subject to the limitations before stated. *Cook v. Stout,* 47 Ill. 530, is directly in point, and sustains the ruling below.

*Second*—Certain witnesses testified to statements made by Charles W. Enos and George W. Campbell in regard to what they had done to influence the testator in making his will. On motion of appellees, the court ordered this testimony stricken out, and the court also thereafter refused to allow appellants to give in evidence other testimony of like character. Although both George W. Campbell and Charles W. Enos testified as witnesses upon the trial, this evidence was not offered by appellants for the purpose of impeaching them, nor is it now insisted that it is competent evidence for that purpose. The contention is, that it is competent as original evidence against them as parties to the suit.

It was held, when the case was here before, that Enos, having failed to accept the trusts imposed upon him by the will, and having failed to qualify as executor, and having also disclaimed any interest in the suit, was properly dismissed therefrom as a party, and was a competent witness on behalf of appellees; and such being the fact, it is clear that proof of his declarations can not be received in evidence to conclude the rights of those who take under the will. In no view could the evidence of the declarations of Campbell be received against any one but himself, since the interests of appellees are in common, and not joint; but to admit the evidence upon the issue in this case for any purpose would affect the interests of all claiming under the will, and we have therefore held, in an analogous case, it is not admissible at all. *McMillan et al. v. McDill et al.* 110 Ill. 47.

Counsel seek to parry the effect of this by the fact that the statements relate only to the fraudulent act of Campbell. But the fraudulent act of Campbell is no farther a matter of inquiry in this proceeding than as it may affect the validity of the will. The issue is upon the validity of the will, and it can

make no possible difference, so far as the present question is concerned, whether the statements of Campbell sought to be given in evidence upon that issue relate to his opinion of the mental condition of the testator at the time of making the will, or to his own fraudulent acts to procure the testator to make the will. In either case they are declarations of one person against the rights of another person having, not a joint, but a community of interest, only, with himself, in the subject matter claimed to be affected by the declarations, and are therefore within the reason of the rule.

*Third*—There was evidence before the jury tending to prove that mistakes were made in the numbers of the lands devised to different legatees, and in other respects, and the court, at the instance of appellees, instructed the jury, in substance, that such mistakes do not render the will invalid, provided the jury find, from the evidence, that at the time of the execution of the will the testator had sufficient mental capacity, as explained in other instructions, to make a will, and that he then acted under no constraint or compulsion. What effect these mistakes have upon the rights of the legatees who suffer by them, is one thing;—those legatees are not here complaining, and these appellants can not urge erroneous rulings affecting them, alone; (*Brown* v. *Miner et al.* 128 Ill. 154;) what effect such mistakes have upon the validity of the will, is another and very different thing. They are circumstances that may be considered in connection with the other evidence on the issues before the jury, but they are by no means conclusive; and so the jury were sufficiently told in the thirteenth instruction given at the instance of appellants, which is as follows:

"If, from the evidence, the jury believe that Joshua Neely executed the instrument in writing alleged to be his last will, because of the false representations made to him (if the proofs show that any such false representations were so made) by Charles W. Enos that the several alleged devises therein con-

tained correctly described and designated certain lands which he, Joshua Neely, desired and intended to thereby devise to John Neely, Mary Sweeney, Ruth Campbell, Sally Campbell and William Sinclair, and if the jury believe, from the evidence, that the devises to said persons, as the same appear in said alleged will, do not and did not designate and describe the lands which Joshua Neely intended and desired to thereby devise to them respectively, and if the jury, from the evidence, further find that Joshua Neely was at the time unable to read or write, and fully depended and relied upon the false representations (if any) so made to him by Charles W. Enos, and would not have executed the writing alleged to be his last will if he had known its contents, they may properly consider such evidence, together with all the other evidence, in determining the fact whether the alleged will was procured to be made and executed by means of false representations, to such an extent as to render it not the free act and wish of Joshua Neely, deceased."

We therefore find no error in the ruling.

*Fourth*—The court refused to give the second instruction asked by appellants, which was, that the burden of proof rests upon those asserting that the paper in evidence is the last will and testament of Joshua Neely, to prove that fact by a preponderance of the evidence. But the court had, in the first instruction given at the instance of appellants, told the jury as follows:

"1. The court instructs the jury, for the contestants, that the issue in this case is, is the paper offered in evidence, purporting to be the last will and testament of Joshua Neely, in fact the last will and testament of Joshua Neely.

"2. The court instructs the jury, for the contestants, that it devolves on the defendants to show, by a preponderance of the evidence, that the following facts are true, before the jury are authorized to find the paper writing offered in evidence to be the last will of Joshua Neely: First, it must be attested by

two or more credible witnesses; second, two of the witnesses must testify that they saw testator sign the will in their presence, or that he acknowledged the same to be his act and deed, and that they signed the same as witnesses thereto, at his request."

To that extent, only, is the burden upon appellees to produce a preponderance of evidence. That proof made, the burden is then upon appellants, and the refusal of the instruction is therefore not error. *Wilbur* v. *Wilbur*, 129 Ill. 392; *Carpenter* v. *Calvert*, 83 id. 62.

*Fifth*—It is objected that the court refused to give the following instruction asked by appellants:

"The court instructs the jury, for the contestants, that the capacity to comprehend a few simple details may in one case suffice to enable the party to intelligently dispose of his property by contract or will, while in another case, if the estate be large, requiring the remembrance of many facts and the comprehension of many details, and the disposition to be made is complicated, the same mental capacity may be wholly insufficient to that intelligent understanding of the business requisite in the making of a valid will; and in this case, if the evidence shows that Joshua Neely was not of sufficient sound mind to comprehend and fully understand the effect of the paper he was signing, then the jury should find that the paper in evidence is not the last will and testament of Joshua Neely."

But the court did give the following instruction at the instance of appellants, which includes, in a more practical form, the idea intended to be expressed in the foregoing:

"The court instructs the jury, for contestants, that in determining the issue in this case, as to whether Joshua Neely had sufficient mind and memory to make the will offered in evidence, the inquiry is to be made in view of the circumstances of this case as shown by the evidence, and a determination reached by a consideration of the nature and character of the business about to be performed in the making of said

will, as shown by the evidence. He must have had, at the time, an intelligent comprehension of the surrounding circumstances, and of their direct consequences and probable results. To constitute a sound, disposing mind, the testator must have been able not only to understand that he is by will disposing of his property, but he must also have capacity sufficient to comprehend the extent of the property devised, and the nature of the claims of others upon him; and if the jury believe, from the evidence, that at the time of making the will in controversy Joshua Neely did not possess such sound and disposing mind as described in these instructions, then they should find that the paper purporting to be the last will of Joshua Neely is not his last will."

And this is in strict conformity with what was said on a like question when the case was here before.

We have carefully considered every question raised in regard to the giving, modifying and refusing of instructions, and we are of the opinion that the jury were fully and fairly instructed as to the law of the case. There was no error in that respect for which the decree below should be reversed.

*Sixth*—The only serious question in the case, as we understand the record, is one of fact. There is a direct conflict in the evidence. Many witnesses testify in support of the contentions of the appellants, and there are cogent reasons why a verdict should have been rendered that way. But there is an equal or greater amount of evidence the other way, and we are unable to say that the reasons in support of the verdict ought not to prevail. To reproduce and carefully discuss all the evidence in the record in this opinion would swell it to a volume, and could subserve no useful end; and to discuss parts of it would be still less profitable and more unsatisfactory to all parties interested in the case. We therefore content ourselves with saying, that we are not satisfied that the decree below is wrong, and we therefore affirm it.

*Decree affirmed.*