DELILAH SMITH *et al.*

*v.*

JAMES J. HENLINE *et al.*

*Opinion filed June 18, 1898—Rehearing denied October 6, 1898.*

1. UNDUE INFLUENCE—*undue influence defined.* Undue influence is any improper or wrongful constraint, machination or urgency of persuasion whereby the will of a person is overpowered and he is induced to do or forbear an act which he would not have done or forborne had he been left to act freely.

2. SAME—*undue influence is a species of constructive fraud, which may be inferred from facts proven.* Undue influence is a species of constructive fraud, and its exercise may be inferred where the power of a beneficiary has been so exercised upon the mind of the donor as, by improper arts or circumvention, to have induced him to make the devise contrary to his deliberate judgment and reason.

3. SAME—*effect where will is procured by beneficiary.* The fact that a will or codicil is procured to be written by persons largely benefited thereby is a circumstance to excite strict scrutiny, and which requires strict proof of volition and capacity.

4. SAME—*effect where beneficiary is the testator's mistress.* The existence of an illicit relation between the testator and his beneficiary does not, as a matter of law, raise a presumption of undue influence, but undue influence is more readily inferred in such a case than where the relation between the parties is lawful.

5. SAME—*when jury may consider fact of illicit relationship.* In determining the question of undue influence the jury may consider the fact of the existence of an illicit relation between the testator and his beneficiary where there is proof tending to show constraint and interference by her, and the testator's impaired mental capacity, loss of will power, sickness or disease when making the will.

6. INSTRUCTIONS—*when instruction does not assume that codicil was not genuine.* Instructions in a will contest which refer to the codicil of the will as the "alleged codicil" and "supposed codicil" are not erroneous, as assuming to tell the jury that it was not the real codicil of the testator.

7. APPEALS AND ERRORS—*objection that bill is not specific in allegations should be made below.* An objection that a bill to contest a will was not sufficiently specific in its allegations of fraud will not be considered when raised for the first time on appeal, as such objection must be made below to give complainant a chance to amend.

8. SAME—*verdict of jury in will contest—when conclusive.* The verdict of a jury in a will contest, rendered upon the conflicting oral testimony of numerous witnesses, has the same force as a verdict in a

suit at law under a like state of facts, and is conclusive on appeal, unless clearly contrary to the weight of evidence.

9. SAME—*when verdict of jury in will contest will be sustained.* Where there is an irreconcilable conflict in the testimony upon which the validity of a will depends the verdict of the jury will not be disturbed on appeal, if the evidence of the successful party, when considered alone, is sufficient to sustain the same.

APPEAL from the Circuit Court of McLean county; the Hon. THOMAS F. TIPTON, Judge, presiding.

This is a bill, filed by the appellees as heirs of one David Henline, deceased, against the appellants, Delilah Smith and Paulina Smith, and one Shelton Smith, executor, and others, as defendants below, to set aside the will and codicil of the said David Henline. The bill was answered by the defendants, and replication was filed to the answer. The bill sought to set aside the will and codicil upon the alleged grounds, that the testator was lacking in testamentary capacity, and was subjected to undue influence from the arts and fraudulent practices of the defendants, Delilah Smith and Paulina Smith, at or about the time of the execution of the will. The question as to the validity of the will and of the codicil was submitted to a jury. The jury returned a verdict, finding the paper, purporting to be the will of David Henline, deceased, to be his last will and testament; but finding the paper, purporting to be the codicil of the last will and testament of David Henline, deceased, to be not the codicil thereto. In other words, the jury found in favor of the validity of the will, but against the validity of the codicil. The court below rendered a decree in accordance with the verdict of the jury, declaring the probate of the will to be valid and binding, but declaring the instrument, purporting to be the codicil, to be null and void, and ordering the probate thereof to be set aside. The present appeal is prosecuted from the decree thus entered.

The will of David Henline bears date the 24th day of December, 1890, and was executed on that day. The

codicil thereto bears no date, and is shown by the proof to have been made, if it was made, on April 22, 1895. David Henline died on May 4, 1895. The will and codicil were admitted to probate in the county court of McLean county on May 13, 1895.

The will gave unto Delilah Smith, and Paulina Smith her daughter, to be held by them jointly, or the survivor of them, 40 acres of land in said county, and also three lots in the town of Lexington in said county, on which was a hotel building. The will directed that, if, at the time of the testator's decease, anything was due upon the said 40 acres and said lots, payment should be made of the same, so that Delilah Smith and Paulina Smith should have said premises clear of any incumbrance. The will also directed, that the remainder of testator's estate, both real and personal, should be distributed among his "legal representatives" in accordance with the statutes of Illinois, unless disposed of by him prior to his decease by deed or otherwise. Shelton Smith was appointed executor. The will was witnessed by John E. Covey and Alfred B. Davidson. The codicil is as follows:

"I, David Henline, of Lexington, McLean county, Illinois, having made my last will and testament dated the 24th day of December, 1890, I do by this my writing, desire to add the following, and hereby direct that this shall be added to my said will as a codicil thereto:

"Whereas no particular bequest was made by me of the farming lands owned by me, and I now desire to make a specific bequest of a portion of said real estate, it is therefore my will, and I hereby give, devise and bequeath to Delilah Smith and Paulina Smith, jointly, eight hundred (800) acres of farming land now owned by me and situated in sections sixteen (16), seventeen (17), nineteen (19), twenty (20), twenty-nine (29), thirty (30), and thirty-one (31), in township twenty-five (25), north, range five (5), east third principal meridian, also, the north-west quarter of section twenty-four (24), north, range four (4),

east third principal meridian, all in McLean county, Illinois. It is my will that the quarter section in Martin township shall be taken first, and the remainder of the eight hundred (800) acres shall be selected by the said Delilah Smith and Paulina Smith out of any lands owned by me in Lawndale township in this will described. And it is my will that this codicil shall be attached to and form a part of my will the same as if contained in my said will and I direct that my executor do carry out the same in all respects."

The witnesses to the codicil are W. Hill, Joseph Humphreys and Alfred B. Davidson. The will is signed by David Henline with a seal; but the codicil is signed by David Henline by his mark with a seal.

It is admitted that a mistake was made in the description of a part of the property in the codicil. The number of the township, in which one quarter section of the land was located, is used instead of the number of the section, and the true number of the section is omitted.

T. C. KERRICK, and WELTY & STERLING, for appellants:

Capacity to transact ordinary business, ability to comprehend objects and subjects of bounty, and freedom from insane delusions affecting the power of disposition, constitute testamentary capacity, even though the mind is not perfectly balanced. *Hutchinson* v. *Hutchinson*, 152 Ill. 347.

The law permits a man to leave all his property which he may by will dispose of, to his mistress and to ignore his wife, if he does so with a free, sound and disposing mind, pursuant to the formalities which the law prescribes. *Arnault* v. *Arnault*, 31 Atl. Rep. 606.

Where a will is attacked on the ground of mental incapacity, it is not enough to show that the testator's mind was impaired by old age and business troubles, where the testimony of the lawyer who drew his will, and of the subscribing witnesses, shows that at the time

of the execution the testator was in possession of his usual mental powers. *White* v. *Starr,* 20 Atl. Rep. 875.

Where the bequests are in accordance with expressed intentions, the jury may consider this with other facts in determining the mental capacity of the testator. *Campbell* v. *Carnahan,* 13 S. W. Rep. 1098.

A person may possess sufficient testamentary capacity to make a will though he be of unsound mind in a measure, or his memory be impaired. *Bice* v. *Hall,* 120 Ill. 599.

The influence necessary to invalidate a will must amount to over-persuasion, coercion or force destroying the free agency or will of the testator. *McFaddin* v. *Catron,* 25 S. W. Rep. 506.

A will, if not the result of undue influence, is not invalidated by the fact that such influence was sought to be exerted. *Trezevant* v. *Kains,* 25 S. W. Rep. 1092.

The existence of an unlawful relation between testator and a woman to whom he bequeaths a portion of his estate is not sufficient to raise such a presumption of undue influence as to carry the question to a jury. *Johnson's Appeal,* 159 Pa. St. 630.

When the evidence tends but slightly to show undue influence, it is important the jury should be instructed correctly as to what constitutes such undue influence as will annul a will. *Myers* v. *Hanger,* 11 S. W. Rep. 974.

Instructions must not assume facts. *Durham* v. *Goodwin,* 54 Ill. 469; *Small* v. *Brainard,* 44 id. 355; *Railroad Co.* v. *Zang,* 10 Ill. App. 594.

Instructions must be based on the evidence. *Hassett* v. *Johnson,* 48 Ill. 68; *Railroad Co.* v. *Ingraham,* 131 id. 659.

Instructions must not be argumentative. *Burns* v. *People,* 126 Ill. 282; *Myers* v. *Hanger,* 11 S. W. Rep. 974.

Admissions or statements of one legatee are not admissible to impeach a will where there is another legatee. *Remand* v. *Pagott,* 61 N. W. Rep. 3; *O'Connor* v. *Madison,* 98 Mich. 182; *Phelps* v. *Hartwell,* 1 Mass. 70; *Atkins* v. *Sanger,* 1 Pick. 192; *Prather* v. *McClelland,* 76 Tex. 575.

A general allegation of fraud is not sufficient to justify admission of evidence of fraud. The particular acts constituting the alleged fraud must be set out in the pleadings. *Fitzpatrick* v. *Beatty*, 1 Gilm. 454; *Roth* v. *Roth*, 104 Ill. 47.

A. J. BARR, F. B. McKENNAN, and BEACH & HODNETT, for appellees:

The making of a gift or devise to one with whom a party has sustained illicit relations is evidence to be considered by a jury upon a charge of undue influence. *Dean* v. *Negley*, 41 Pa. St. 313; *Shipman* v. *Furness*, 69 Ala. 555; *Leighton* v. *Orr*, 44 Iowa, 679; *Hanna* v. *Wilcox*, 53 id. 547; *Burns* v. *Jarnegan*, 3 Baxter, 282; *McClure* v. *McClure*, 86 Tenn. 177; *Kissinger* v. *Kissinger*, 37 Ind. 341; Schouler on Wills, sec. 236; Redfield on Wills, 532-534; 3 Lead. Cases in Eq. 146.

Unjust, unreasonable and unnatural provisions of a will are proper for consideration where fraud, undue influence and want of testamentary capacity are charged. *McCommon* v. *McCommon*, 151 Ill. 440; *Kimball* v. *Cuddy*, 117 id. 213; *Patterson* v. *Patterson*, 6 S. & R. 55; *Clark* v. *Fisher*, 1 Paige, 171; *Lynch* v. *Clements*, 24 N. J. Eq. 451.

Where the testator, at the time of making the will, is old and feeble, with mind impaired, and the will is procured to be made by the beneficiaries in the absence of the relatives of the testator, there is a presumption of undue influence. *Greenwood* v. *Cline*, 7 Ore. 17; *Bayard* v. *Conover*, 39 N. J. Eq. 244; *Swenarton* v. *Hancock*, 22 Hun, 38; *Tyler* v. *Gardner*, 35 N. Y. 559; *Delafield* v. *Parish*, 25 id. 35; *Crispell* v. *Dubois*, 4 Barb. 397.

Misrepresentation, or like artifice causing the making of a will, is such undue influence as to authorize the setting aside of the will. *Tyler* v. *Gardner*, 35 N. Y. 559; *Carroll* v. *Hause*, 48 N. J. Eq. 269.

Upon a charge of want of testamentary capacity, and fraud and undue influence in procuring the execution of

a will, evidence is admissible of matters occurring in the testator's family and his relations with the beneficiaries, and his declarations showing his feelings toward them. *Reynolds* v. *Adams,* 90 Ill. 134; *Cockerman* v. *Cockerman,* 17 Ill. App. 605; *Beaubien* v. *Cicotte,* 12 Mich. 486; *Dennison's Appeal,* 29 Conn. 402; *Mooney* v. *Olsen,* 22 Kan. 69; 27 Am. & Eng. Ency. of Law, 505, 506; Schouler on Wills, sec. 243.

A person old and feeble and of weak mind is easily influenced by designing persons, and courts will scrutinize dispositions of property made by such persons to see if the same are the result of undue influence. *Reynolds* v. *Adams,* 90 Ill. 149; *Walker* v. *Hunter,* 17 Ga. 413; *Harrel* v. *Harrel,* 1 Duv. 203; Schouler on Wills, sec. 238; *Weir* v. *Fitzgerald,* 2 Bradf. 42.

The verdict of the jury is conclusive unless against the preponderance of the evidence. *Calvert* v. *Carpenter,* 96 Ill. 65; *Moyer* v. *Swygart,* 125 id. 262; *Hoobler* v. *Hoobler,* 128 id. 645; *Meeker* v. *Meeker,* 75 id. 260; *Long* v. *Long,* 107 id. 210; *Bible Society* v. *Price,* 115 id. 623; *Greene* v. *Greene,* 145 id. 270.

The verdict of a jury in a will case stands upon the same footing as the verdict of a jury at law, and will not be set aside where there is evidence to support it. *Calvert* v. *Carpenter,* 96 Ill. 63; *Shevalier* v. *Seager,* 121 id. 564.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The decree of the court below was in favor of the present appellants, so far as it held the will of the testator to be valid, and against the appellees, who sought to set aside the will, as well as the codicil. The decree was adverse to the appellants in holding the codicil to be invalid, and setting it aside, but in that respect it was in favor of the appellees. The present appeal, prosecuted by the appellants, seeks to reverse the decree in so far as it holds the codicil to be invalid. The appellees assign no cross-errors in relation to that part of the de-

cree which sustains the will, and make no complaint of the same. The only question in the case, therefore, is, whether or not the codicil of the deceased testator, David Henline, was invalid and properly set aside.

The grounds, upon which it is sought to impeach the codicil, are lack of testamentary capacity and the exercise of undue influence. As is usual in cases of this character, there is great conflict in the testimony. The appellants here, proponents of the will below, examined twenty-six witnesses. The appellees here, complainants below, examined twenty-two witnesses. Of these forty-eight witnesses many give it as their opinion that the testator had such mental capacity as that he was able to transact ordinary business, while many of them are of the contrary opinion. In cases of this character the verdict of the jury is to have the same force and effect, as is given to a verdict in a case at law under a like state of facts; and when the verdict in such case is not manifestly against the weight of evidence, the court is bound by it in the same manner and to the same extent, as if it were a case at law. The jury had before them and saw the witnesses. The judge who tried the case was satisfied with the verdict and acted upon it. The evidence, particularly upon the question of mental capacity, is conflicting, but a careful consideration of it does not show, that the finding of the court below is clearly against its weight. Where the testimony is thus conflicting and is not clearly against the weight of the evidence, the finding of the jury must be regarded as conclusive. (*Calvert* v. *Carpenter*, 96 Ill. 63; *Buchanan* v. *McLennan*, 105 id. 56; *Greene* v. *Greene*, 145 id. 264).

There is another rule upon this subject well settled by the decisions of this court; and that rule is, that, where there is an irreconcilable conflict in the testimony touching the facts, upon which the validity of the will depends, the decree of the lower court will not be reversed, if the evidence of the successful party, when considered alone,

is clearly sufficient to sustain the verdict. (*Calvert* v. *Carpenter, supra; Moyer* v. *Swygart,* 125 id. 262; *Bevelot* v. *Lestrade,* 153 id. 625; *Harp* v. *Parr,* 168 id. 459).

A reference, however, will be made to some of the facts, so far as it is necessary to understand the questions of law involved, and the objections made to the admission of evidence and to the instructions given upon the trial of the case in the court below.

The deceased, David Henline, was about seventy-three years of age when he died on May 4, 1895. He was a bachelor, never having been lawfully married. He had two brothers at the time of his decease, named William and John, and several nephews and nieces. He had been engaged in business with his brother, William, many years, and was a partner with him in the ownership of a considerable quantity of land. In 1868, or 1869, the brothers met with reverses in business. David's mind seemed to have been so seriously affected thereby, that he secluded himself in a·room in the second story of his house for about a year, and during that time declined to do any business. During the remainder of his life he permitted his brother, William, to manage their business, and relied mainly upon his judgment in matters relating thereto. It is conceded by both parties, that the deceased, for many years prior to his death, perhaps as much as twenty-five years, sustained illicit relations with the appellant, Delilah Smith. Some time after this illicit relationship began, the said Delilah married a man by the name of Smith, with whom she went to Missouri and there lived for some months. During their stay there the appellant, Paulina Smith, was born. Not long thereafter Delilah Smith and her husband returned to McLean county, where Smith died, and David Henline and Delilah Smith and Paulina Smith, the latter being called in this record Susie Smith, lived together as one family until the death of David Henline. It is claimed by counsel for the appellants, that Paulina Smith was the daughter of David

Henline; but she was born in lawful wedlock, while Delilah Smith and her husband were living together, and the presumption of law is, that she was their child. In 1890 the deceased, David Henline, while living with Delilah Smith and while sick in bed, was induced to buy a hotel in the town of Lexington for the sum of $4000.00. He moved into the hotel with Delilah Smith, who took charge thereof, and he lived there with her and her daughter until his death. While he was sick in the hotel in 1890, he made his will, dated December 24, 1890. In the summer of 1894 the deceased complained of a numb feeling in his right foot, leg and hand, and said that "it divided him up the back of his right side, and, when it got to his head, he did not know anything, and he felt as if he was cut in two."

About April 15, 1895, while visiting with one of his brothers, the deceased, David Henline, was taken sick and complained of the numbness in question, and said of it: "When it gets into my head I don't know anything." One of his brothers took him to the hotel at Lexington on Monday, April 15, 1895. On the afternoon of Tuesday, April 16, 1895, he was obliged to go to bed, and remained there until he died. He was paralyzed. The right side of him and his right hand were numb and dead. He was unable to sit up in bed, and had to be propped up. He lost his power of articulation, and was unable to talk, or to write. He did not recognize his friends, and, when spoken to, could only answer a part of the time "yes" or "no," and a part of the time he would mumble out, in reply to questions, some such expressions as "um," and "ah." Those waiting upon him were obliged to rub his hands and body in order to promote circulation of the blood. The disease, of which he died, was softening of the brain. This disease progressed and more and more affected his brain from the time he went to bed, on Tuesday, April 16, up to the day he made his mark to the codicil, which was Monday, April 22. During the week

174—13

before the codicil was signed, Delilah Smith and her daughter, Paulina Smith, were living in the hotel where the deceased was lying sick, and most of the time were in the same or an adjoining room. The testimony shows, that, at this time and for some time before, the appellant, Paulina Smith, was living at the hotel in a state of adultery with a man named Al. Smith, the son of Shelton Smith, the executor named in the will. Al. Smith lived at the hotel, or was there most of the time, and was the father of an illegitimate child by said Paulina. A man, named William Costello, lived and boarded at the hotel. One of the witnesses says, that one evening, during the sickness of the testator, Delilah Smith and Costello were in the cellar drinking beer; they had a keg of beer there and made such a noise as to seriously disturb deceased.

On the evening of Wednesday, April 17, one Buel Stevens, a livery-stable keeper in Lexington, was sent for by Delilah Smith, and had a talk with her and her daughter at the hotel. She requested Stevens to go into the room where the deceased was sick, and ask him to make a will, giving a certain 160 acres of land to her and her daughter, Susie or Paulina. Stevens went into the room in pursuance of this request, and asked the deceased if he would make such a will. He refused to do anything of the kind. Again, on Sunday morning, April 21, Delilah Smith went to the stable after Stevens, but failed to find him in his stable. Later in the day she sent a messenger for him, but still failed to find him. On Sunday evening, April 21, Joseph Humphreys was present in the room where Al. Smith and Mrs. Smith and Susie were. He came to inquire how David Henline was, and was requested by Delilah Smith to go in and talk to the testator upon the subject of making a will, but Humphreys declined to do so, and told them to send for Stevens. He says, however, that he went into the room where the deceased was, and the latter was lying with his eyes and mouth half open, and seemed to be half asleep. Al. Smith

then went for Stevens, and Stevens came over. Stevens
says, that Mrs. Smith had sent over and requested him
to come immediately; that he found Mrs. Smith and her
daughter and Humphreys; that Mrs. Smith told him she
wanted him to talk with David; that she said she thought
David was crazy; that she wanted him to tell David that
she had sent for his brothers, William and Jack, and his
nephew, John, and that they would not come to see him,
and were only waiting for him to die to get what prop-
erty he had. She had not sent for his brothers and
nephew as she thus stated. She also told Stevens to tell
him, that, if he would make a will and give her and Susie
the 160 acres, "she would fire Costello, and Susie would
fire Smith." Stevens says that he told her it would do
no good, as he had tried the same thing on the Wednes-
day previous without success, but that he went in to see
the deceased at her request and spoke to him; he was
lying on his left side; he paid no attention; Stevens sat
down by his side and took hold of his hand; it was cold;
he asked him how he was feeling; he made a mumbling
noise, and said: "Ah, ah, ah." Stevens further says, that
he told the deceased that he had been talking to Delilah
and Susie, and they said they had sent for his brothers
and nephew, and they refused to come and see him; that
Delilah and Susie had promised, that, if he would make
a will and give them 160 acres of land, Susie would "fire"
Al. Smith, and she would "fire" Costello. All Stevens
could get out of him was the mumbling noise heretofore
referred to. At times he seemed to know what Stevens
was talking about, and again he seemed either not to
know, or paid no attention. He would turn his head
away. Stevens returned to the room where Mrs. Smith
and Paulina and Humphreys were, and told them that he
had stated to the deceased all that he had been requested
to state. A day or two before this, Shelton Smith, the
father of Al. Smith, had gone to a justice of the peace
to get a description of the land owned by the deceased.

This was done at the request of Delilah Smith. On Monday morning, April 22, a justice of the peace, named Davidson, was seen by Stevens or Smith, and requested to come to the hotel to make the codicil.

When the codicil was made, Delilah Smith and Shelton Smith were in the room. A doctor named Hill, and the justice, Davidson, were also there. It appears from the testimony of these witnesses, that the deceased was unable to write; that a slate and pencil were brought in and handed to him, but he shook his head, not being able to use them; that he could not tell what he wanted, except as questions were asked; that a map was used and pointed to to indicate the location of his lands; but to all that was said and done he merely nodded his head, and said nothing; when the mark was made, Davidson held the pen and the deceased took hold of the top of it, and Davidson wrote his name. Doctor Hill says, that he had the disease of the brain which causes aphasia, an impairment of the mind; that the cause of his death was the spreading of the disease over his brain; that his mind was impaired so far that he could not use language, and could not write, and all he could do was to nod and shake his head; that his cerebrum was probably inflamed at that time. None of his relatives were present when the codicil was made, and none of them were informed of the making of it, until after his death. Mrs. Edwards, an old lady, and the mother of the appellant, Delilah Smith, says that her daughter refused to send for the deceased's brother, William; that she, Mrs. Edwards, nursed the deceased during his sickness; that they could not understand what the deceased said or wanted; that she tried to make him understand, but he could not say a word that any one could comprehend.

In view of such testimony as has been above referred to, we are unable to say that the jury were not justified in returning the verdict which they rendered. The existence of an illicit relation between a deceased testator

and his mistress will not give rise to a presumption of undue influence as a matter of law, but undue influence is more readily inferred in case of a will made in favor of a mistress than in the case of a will in favor of a wife. The existence of the relation is a circumstance to be considered by the jury, along with other facts in the case. "The influence of a lawful relation may result in testamentary dispositions which ought not to be set aside, when, if they resulted from the influence of an unlawful and immoral relation, they would produce deep suspicion," the question to be determined being whether the influence exerted was undue or not. The jury have a right to consider the fact of the unlawful relationship where there is proof, as there is in the case at bar, tending to show constraint and interference, impaired mental capacity, loss of will power, and sickness or disease at the time of the making of the will. (*McClure* v. *McClure*, 86 Tenn. 174; *Johnson's Estate*, 159 Pa. St. 630; *Monroe* v. *Barclay*, 17 Ohio St. 302; 27 Am. & Eng. Ency. of Law, p. 514).

This codicil was drawn in the absence of the near relatives of the deceased, at the instance and dictation of the beneficiaries in the will, and after false statements made by them as to the conduct and feelings of the absent relatives; and its terms are hostile and opposed to the terms of the will of December 20, 1890, executed in favor of such beneficiaries. These beneficiaries, moreover, lived with the testator, who was old and feeble. His mind was evidently so impaired, that he was more or less under the domination of Delilah Smith and her daughter. The will previously executed had given appellants 40 acres of land and a hotel building, and had given the remainder of his property to his legal heirs or representatives. The codicil, signed by the testator under the circumstances already detailed, went further, and gave them 800 acres of land, in addition to what had been devised by the terms of the will. There is nothing in the testimony of the witnesses to show, that the previous

will was present or called to the attention of the testator
when he signed the codicil, although the codicil upon its
face refers to the will.    The proof also shows, that the
quantity of land mentioned by Mrs. Smith in her instruc-
tions to Stevens, as being desired by her through the will
of the deceased, was 160 acres.    Humphreys also testifies
to 160 acres of land as being the amount mentioned in
the conversation.    But when the codicil was drawn, the
quantity of land given thereby was 800 acres, instead of
160 acres.    It appears, that a map was used for the pur-
pose of calling the attention of the testator to the loca-
tion of the lands, but whether he in any way pointed to
or designated the particular sections referred to in the
codicil does not clearly appear.    Many authorities men-
tion, as features unfavorable to the validity of a will,
and as indicating the probable exercise of undue influ-
ence, such concurring circumstances as the following:
the departure from the terms of a previous testamentary
disposition; the false impressions under which the in-
strument is made; the active agency of the beneficiary
in procuring it to be drawn; the absence of those who
had at least equal claims upon the justice of the tes-
tator; old age accompanied by feebleness and disease.
(*Tyler* v. *Gardiner*, 35 N. Y. 559; *Delafield* v. *Parish*, 25 id.
35; *Blewitt* v. *Blewitt*, 4 Hagg. 463; *Greenwood* v. *Cline*, 7
Ore. 17; *In re Hess' will*, 48 Minn. 504, and note to same in
31 Am. St. Rep. 685; 2 Lead. Cas. in Eq. p. 2, par. 1285).
Where a will is procured to be written by persons largely
benefited by it, it is a circumstance to excite a stricter
scrutiny and requires stricter proof of volition and ca-
pacity.    (*McCommon* v. *McCommon*, 151 Ill. 428; *Purdy* v.
*Hall*, 134 id. 298; *Byard* v. *Conover*, 39 N. J. Eq. 244).    The
latter case of *Byard* v. *Conover* is somewhat similar in its
facts to the case at bar.    There, a bachelor, seventy-two
years old, while in a moribund condition, signed a paper
purporting to be a will, giving all his property to his
housekeeper, who had lived with him for many years,

and who had previously prepared the paper which was signed; none of the testator's brothers and sisters were present, or informed of the making of the will; and it was held, that the paper should be refused probate on the ground of want of capacity and undue influence.

It is only necessary to notice certain objections urged upon our attention by counsel for appellants. It is said, that the allegations of the bill are not sufficiently specific in relation to the charges of fraud. This specific objection was not made in the court below, either by demurrer to the bill, or in opposition to the introduction of testimony, and, consequently, cannot be made here for the first time. If the allegations were not sufficiently specific in this regard, and attention had been called to them in the court below, the complainants there might have been permitted to amend their bill. (*American Bible Society* v. *Price*, 115 Ill. 623).

It is said, that the court below improperly admitted the conversation had between Mrs. Smith and Stevens in regard to what the latter was to say to the deceased upon the subject of making his will. Stevens must be regarded as the agent of Mrs. Smith and her daughter to communicate their wishes to the deceased in regard to the will. What she told Stevens to say to the deceased was so told on the evening before the codicil was executed, while she and her daughter were in a room adjoining that in which the deceased lay, and was for the purpose of influencing the deceased's mind to make his will or codicil in a certain way. The main objection made to this testimony is, that Mrs. Smith and her daughter were both legatees under the will, and that admissions and statements of one legatee, prejudicial to the will, cannot be admitted where there are other legatees. As we read the testimony, both of the legatees, to-wit, Mrs. Smith and Paulina Smith, her daughter, were present when the conversations were had with Stevens and Humphreys in reference to the communications to

be made to the deceased. By the terms of the will and codicil Mrs. Smith and her daughter were joint devisees. The property was devised to them jointly Where the interest of the devisees is joint, the evidence may be admitted against all of them, and where the parties have a joint interest in the matter in suit, an admission made by one is, in general, competent evidence against all. (*McMillan* v. *McDill,* 110 Ill. 47; *Southern Life Ins. Co.* v. *Wilkinson,* 53 Ga. 535). Under our statute, parties are permitted to create the common law estate of joint tenancy, with its common law incidents, by expressly declaring in the instrument executed, that the estate conveyed shall pass in joint tenancy. (*Mette* v. *Feltgen,* 148 Ill. 357).

The first instruction given for the appellees is criticised, because it uses the expressions "alleged execution of the codicil" and "supposed codicil." It is said, that the use of the words "alleged" and "supposed" was equivalent to telling the jury, that the codicil was not the real codicil of the testator. We do not think so. The proponents of the will allege that the codicil was valid. The appellees deny that it was valid. To speak of it as an "alleged" codicil was no more casting discredit upon its validity, than to speak of it as the "codicil" without the use of the word "alleged" would have been to make an announcement in favor of its validity. The question, submitted to the jury in this case, was, whether "the writing read in evidence, purporting to be the codicil of the will of David Henline, deceased," was really his codicil. This is the form of expression used in all cases of contested wills where the question whether the paper is a will or not is to be submitted for their determination to the jury. It cannot be said that, because the instrument is spoken of as one "purporting" to be a codicil, the jury are thereby instructed that it is not a codicil. An instruction, making use of the word "alleged" in the same way in which it is here used, was given in *Campbell* v. *Campbell,* 138 Ill. 612, and was approved by this court.

The first instruction given for the appellees is also criticised because of the following language: "The court instructs you, that if you believe from the evidence, that fraud was practiced on David Henline, deceased, in procuring the alleged execution," etc. It is said, that the instruction is defective in not indicating the nature or character of the fraud, or the persons by whom it was exercised. Undue influence to avoid a will must be such as to overcome the free agency of the testator at the time the instrument is made, so as to substitute the will of the beneficiary, or some other person, for his will. What constitutes such undue influence will depend upon the circumstances of each case. But undue influence is a species of constructive fraud which the court will not undertake to define by any fixed words. Its exercise may be inferred in all cases where the power of the person, receiving a devise or other like benefit, has been so exercised upon the mind of the donor, as, by improper arts or circumvention, to have induced him to make the devise, or confer the benefit, contrary to his deliberate judgment and reason. (*Shipman* v. *Furniss,* 69 Ala. 555). It is immaterial by whom the undue influence is exercised, whether by a beneficiary or an outsider. (27 Am. & Eng. Ency. of Law, pp. 500, 501). The instruction was not erroneous for the reasons stated.

The second instruction is objected to, because it tells the jury that the law in the first instance casts the burden of proving the will and codicil upon the proponents alleging its validity. Such is the rule which has been adopted by this court in a number of decisions. (*Harp* v. *Parr*, 168 Ill. 459). It is said, however, that, under this instruction, the jury could not know that, after the burden of proof was in the first instance put upon the proponents, it had shifted to the contestants. If this was a defect, it was cured by the first instruction given for the contestants. The latter instruction told the jury that, when the proponents had proven the due execution of

the will and codicil in question, and the capacity of the deceased to make the same, by the signing witnesses, a *prima facie* case was made out in favor of the validity of the will and codicil, and then the burden of proof was shifted to the complainants to prove, by a preponderance of the evidence, some one or more of the grounds alleged against the validity of the will and codicil.

Objection is also made to the fourth instruction given for the appellees. This instruction is unobjectionable as it merely told the jury, in substance, that the condition of the testator's mind at the time of the execution of the will was the real subject of inquiry. Such is the law. The sixth instruction given for the appellants announced the same rule, namely, that the deceased must be competent to make a will at the time when he made the codicil in question. The real question is, whether the testator, at the time of making the instrument purporting to be his will, had such mind and memory as to enable him to understand the particular business in which he was engaged. (*Craig* v. *Southard*, 148 Ill. 37).

The objection to the fifth instruction, given for the appellees, is disposed of by what has already been said in regard to the first. The seventh instruction given for the appellees, which defines what constitutes testamentary capacity, or a sound and disposing mind, agrees with the views on this subject laid down by this court in *Campbell* v. *Campbell, supra,* and *Nicewander* v. *Nicewander,* 151 Ill. 156.

It is said, that the eleventh instruction assumes that the testator was subjected to "repeated urgings," and for this reason is defective. The instruction used the following language: "If you further believe from the evidence that he was too weak to resist repeated urging, and that undue influence was brought to bear upon him," etc. The instruction does not make the assumption charged against it, but leaves it to the jury to find, whether, as a fact, there was repeated urging. There was evidence in the record, tending to show that the

testator was at least twice urged to make a will in behalf of the defendants. Counsel say that repeated urging does not constitute undue influence. Whether it does or not will depend upon circumstances; and, certainly, repeated urging in connection with other facts may be considered by the jury in determining whether undue influence was exercised. The instruction does not state that repeated urging is undue influence. Undue influence, however, has been defined to be "any improper or wrongful constraint, machination, or urgency of persuasion, whereby the will of a person is overpowered, and he is induced to do or forbear an act which he would not do, or would do if left to act freely." (27 Am. & Eng. Ency. of Law, p. 453).

Some other objections are made to the instructions, but we do not deem it necessary to discuss them. Upon a careful review of the whole record, we are of the opinion that the decree of the court below was right.

Accordingly, the decree of the circuit court is affirmed.

*Decree affirmed.*