HENRY RICHARDSON *et al.*

*v.*

WILLIAM KELLY.

1. WITNESS—*impeachment by proof of contrary statements.* The rule is inflexible, that a witness can not be impeached by proof of his having made contradictory statements out of court, unless his attention has been directed, in his examination, to such statements, specifying particularly the time and place.

2. GAMING—*action to recover thing lost.* In trover to recover the value of a mare lost on a wager upon a horse race, it is error in an instruction to make the plaintiff's right to recover depend upon the fact that the animal was taken against the will and protest of the plaintiff. The action lies, although the plaintiff may have voluntarily given possession.

APPEAL from the Circuit Court of Calhoun county; the Hon. CYRUS EPLER, Judge, presiding.

Mr. GEO. W. HERDMAN, for the appellant.

Mr. CHIEF JUSTICE SCHOLFIELD delivered the opinion of the Court:

This was trover, by appellants against appellee, for the conversion of a mare,

A race was run by the mare in controversy, with a mare belonging to appellee and one Ruyl, on the 7th of February, 1874, on the result of which, one mare was wagered against

the other.   After the race was run, appellee, claiming that he had won the wager, went to the rider of the mare in controversy, who was holding her, and took her away from him; and since then, he has detained and converted her to his own use.

Appellants claimed that the race was not run as it was agreed it should be, and, therefore, denied the right of appellee to take the mare.

The chief controversy at the trial was, whether the mare belonged to appellants or to one Parker.   Appellants were both sworn, and examined as witnesses on their own behalf, and they each testified, as did also Parker, that at the time of the race, and when it was agreed to be run, the mare belonged to appellants.   They are also fully corroborated by one Dewey, who testified that he was present at the sale, and partially by one Hammond, who, though not present at the sale, was cognizant of the change of possession from appellants to Parker of another mare, given in part payment.

The race was agreed upon between Parker and appellee and Ruyl—Parker acting, however, as he testifies, and as appellants and Dewey, also, testify he was to act in making the race, as agent for appellants.   Appellee and Ruyl testify that they had no knowledge, either when the race was agreed upon or when it was run, that the mare belonged to appellants; that they supposed she belonged to Parker, and that they would not have agreed to make the race with appellants.   Evidence was also given of declarations of appellants, at, and subsequent to the running of the race, to the effect that they had no interest in the race, or the mare in controversy.   John Churchman testified that he remembered a publication, in a newspaper published at Hardin, in regard to the race; that after that, and on the Tuesday before the race came off, Parker told him, if he saw appellee and Ruyl, to say to them that it was a blind about his selling the mare to appellants; that the article in the newspaper about his having sold the mare to appellants, was put in to deceive his wife and mother-in-law, who were opposed to his running the race; and that they need pay no attention to it, as "he intended to run the race

on the square." He also testified that, on the day of the race, he heard Parker say he did not know what appellants were squealing about; that he was satisfied with the race. Andrew J. Poor testified that he was at the race, and saw Parker on the track, and Parker said to him that he had the best mare in the world, and if she could not win on that track, he did not want her. N. Everhart testified that he was at the race, and heard Parker say that he did not know what appellants were disputing about, for they did not own the mare and had nothing to lose. John Condon testified that he was at the race, and heard Parker say the race was fair, and that the mare was his.

None of these conversations of Parker appear to have been in the presence or hearing of appellants, or either of them; and, for this reason, appellants, by their counsel, moved that the court exclude them from the jury. But the court overruled the motion, except as to the witness Condon, with the caution that the jury would understand that the statements of the witness Parker, in which he claimed to own the mare, made out of the presence and hearing of appellants, were not binding upon appellants; but that the jury might consider them so far as they might tend to impeach the witness Parker. To this ruling, appellants took exception, and now urge it as ground for reversal of the judgment.

It is very clear, the ruling of the court was erroneous. Parker, in his examination, did not have his attention directed to either of these conversations, and the rule is inflexible, that a witness can not be impeached by proof of his having made contradictory statements out of court, unless his attention has been directed, on his examination, to those contradictory statements, specifying, particularly, time and place. *Regnier* v. *Cabot,* 2 Gilm. 34; *Root* v. *Wood,* 34 Ill. 283; *Miner* v. *Phillips,* 42 id. 123; *Winslow* v. *Newlan,* 45 id. 145.

Appellants asked the court to instruct the jury as follows:

"The court instructs the jury for the plaintiffs, that if you believe, from the preponderance of the evidence, that the plaintiffs owned the mare in controversy at the time of said

race, and further find that the defendant, Kelly, took the said mare of said plaintiffs, then you will find for the plaintiffs whatever sum the evidence will warrant you in saying she was worth."

The court refused to give the instruction as asked, but modified it by adding, after the words "the defendant, Kelly, took the said mare," the words "*from and against the will and protest*," and gave it as thus modified. The modification was erroneous. The second section of the act entitled "Gaming," approved March 3d, 1845, authorizes the recovery, by an action of debt, detinue, assumpsit or trover, of any sum or sums of money, or other valuable thing, amounting in the whole to the sum of ten dollars, which shall be lost by playing at cards, dice, or any other game or games, which shall have been paid or delivered by the person losing. See Purple's Stat. vol. 1, p. 592. *Tatman* v. *Strader*, 23 Ill. 493, settles that horse racing is a "game," within the contemplation of this section; and, since the section makes no distinction between cases where the money or property is paid or delivered by the loser to the winner, with or without protest, courts are not warranted in making such distinction. Both the letter and the spirit of the statute authorize a recovery of *all* money or property thus lost, and paid or delivered to the winner, without regard to the disposition and feelings of the loser at the time it was paid or delivered.

For the errors indicated, the judgment is reversed and the cause remanded.

*Judgment reversed.*