THE QUINCY HORSE RAILWAY AND CARRYING COMPANY

*v.*

EDWARD F. GNUSE.

*Filed at Springfield March 30, 1891.*

264:78 Fed 707
25 LRA 665n

1. IMPEACHMENT OF WITNESS—*contradictory statements out of court—laying the proper foundation.* The rule is inflexible that a witness can not be impeached by proof of his having made contradictory statements out of court, unless his attention has been directed, on his examination, to those alleged contradictory statements, specifying particularly the time and place. It is not enough to ask the witness the general questions whether he has ever said so and so.

2. In a suit against a street railway company, to recover damages for alleged negligence in allowing a drunken driver to run a car drawn by mules, the evidence was conflicting as to whether such driver, at the time of the accident, was drunk, and he testified denying that he was intoxicated. On cross-examination he was asked if he did not, after the first trial of the case, (there having been several trials,) at a named place, tell D. and H., in a conversation about the accident, that

QUINCY HORSE RY. CO. *v.* GNUSE.                265

Brief for the Appellant.  Opinion of the Court.

he did not deny being drunk at the time of the accident, and he denied having said so, at that or any other place. The court allowed the plaintiff to prove, by D. and H., that the driver, shortly before the first trial, did make such statements: *Held*, that the admission of such impeaching evidence was erroneous.

3. EVIDENCE—*statements as of the res gestæ.* On the trial of a suit for damages against a street railway company, for alleged negligence in running a team and car over the plaintiff, a lad aged about seven years, the statements of the driver of the car just after the car was stopped, and while the plaintiff was under it, are proper to be shown in evidence, as part of the *res gestæ.*

APPEAL from the Appellate Court for the Third District;— heard in that court on appeal from the Circuit Court of Adams county; the Hon. WILLIAM MARSH, Judge, presiding.

Mr. WILLIAM McFADON, for the appellant:

The foundation for an impeachment must always be laid by calling the witness' attention to the time, place and persons present.  *Root* v. *Wood*, 34 Ill. 286; *Miner* v. *Phillips*, 42 id. 130; *Richardson* v. *Kelly*, 85 id. 493; *Murphy* v. *May*, 8 Bush, 33.

The circuit court erred in allowing Reuter and Nolta to testify as to what the driver said after the car was stopped and the accident was over. It matters not that the statements were made shortly after the accident. *Williamson* v. *Railroad Co.* 144 Mass. 150.

Mr. CHESTER A. BABCOCK, for the appellee, contended that the record shows a sufficient foundation was laid for the admission of the impeaching evidence.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was an action brought by Edward F. Gnuse, who sued by next of friend, J. Henry Gnuse, against the Quincy Horse Railway and Carrying Company, to recover for an injury received by the plaintiff on the 13th day of June, 1884. There have been several trials of the cause. The last one resulted

in a verdict and judgment in favor of plaintiff for $6000, which, on appeal, was affirmed in the Appellate Court.

At the time of the injury the plaintiff was not quite seven years old. He resided with his father at his store, at the corner of Eighth and Jefferson streets, in Quincy. The appellant operated a street car line, running north and south, on Eighth street, in front of the store occupied by the plaintiff's father. There was a water trough in front of the store door. The plaintiff was playing in front of the store. Two girls passed by, and the boy sprinkled water from the trough upon them, when one, for the purpose of frightening him, "clapped her hands and ran towards him, stamping her foot." The boy, being frightened, ran across the street in a south-easterly direction, looking back over his right shoulder. As he approached the track, a street car, drawn by two mules driven by one Louis Koch, came from the north. The car came from the north, as is claimed by the plaintiff, at a high rate of speed, the "mules going in a gallop." As the boy reached the track he came in contact with the mules, and he was first thrown between them, and then under the car. The injury was a serious one, resulting in the loss of the use of the right arm.

It was insisted on the trial, that the injury resulted from the negligence of the appellant in operating its car. It was claimed that the car was drawn at a dangerous and high rate of speed, and that the driver was drunk. At the time the accident occurred, the manner in which the car was run was one of the controverted questions of fact before the jury. Whether the car driver was drunk was also one of the controverted questions. The plaintiff proved by a number of witnesses that the driver had his hat drawn down over his eyes; that he was drunk, and appeared not to see the boy when he struck him. On the other hand, the defendant introduced evidence tending to show that the car was not run at a high rate of speed, and the driver was not drunk or intoxicated when the accident happened. The driver himself testified

that he was not drunk or intoxicated. Upon which side the evidence preponderated on this important question before the jury it is not our province to determine. Whether the defendant was guilty of negligence which resulted in the injury, was a question for the jury. If, however, the street car company placed its car in the hands of. a drunken driver, who drove along the streets at a high rate of speed, oblivious to any and all persons who might happen to cross the street, the jury would not have to deliberate long in order to arrive at the conclusion that the street car company was guilty of negligence. It will thus be seen that a proper determination of the rights of the parties absolutely required that nothing should be introduced as evidence but legal testimony.

As was said before, the street car driver testified that he was not drunk at the time of the accident. For the purpose of impeaching his evidence the plaintiff undertook to show that he had made statements out of court contrary to what he testified to on the trial, and as a foundation for proving such contradictory statements, plaintiff asked the witness, when on the stand, the following questions:

Q. "Did you not, after the trial,—after that first trial of this case,—at the back door of Gnuse's place, at Eighth and Jefferson streets, tell Herman Dix and Henry Halling, in a conversation there about this accident, that you did not deny being drunk at the time of the accident?

A. "I never had any conversation with him at the time of the accident.

Q. "Did you say that?

A. "No, sir.

Q. "Did you say that in substance?

A. "No, sir.

Q. "Did you say that to these persons at any other place?

A. "No, sir."

The plaintiff then called Herman Dix, and asked him the following question: "Did Louis Koch, shortly before the first

trial of this case, at the back door of Gnuse's business place, at Eighth and Jefferson streets, in a conversation about the circumstances of this injury to Gnuse's boy, say to you, in the presence of Henry Halling, or to Halling, in your presence, that he did not deny being drunk at the time of the accident?" Defendant objected that the evidence called for was not in rebuttal, and no foundation was laid for asking this to impeach Koch's testimony. The court overruled the objection. Defendant then and there excepted, and witness answered, "Yes, sir."

Henry Halling was also called as a witness, and was asked the following question: "Mr. Halling, were you present with Herman Dix, at the back door of Gnuse's store, a little while before the first trial of this case, where, in a conversation about this case, Louis Koch, the driver of the defendant, stated there, to you or to Dix, in the presence of Dix or in your presence, or both, that he did not deny being drunk at the time of the injury?" Defendant objected that the evidence was not in rebuttal, and no proper foundation had been laid for the evidence asked, or for impeaching the witness Koch. The objection was overruled by the court. Defendant excepted then and there to the decision of the court, and witness said, "Yes, sir."

It is apparent that the ruling of the court in the admission of this evidence was erroneous, and that, too, upon a question which might be the turning point in the case. The witness Koch was not interrogated in regard to a conversation which occurred before the first trial, and, as held in *Richardson* v. *Kelly*, 85 Ill. 491, the rule is inflexible that a witness can not be impeached by proof of his having made contradictory statements out of court, unless his attention has been directed, on his examination, to those contradictory statements, specifying particularly time and place. See, also, *Miner* v. *Phillips*, 42 Ill. 130, *Root* v. *Wood*, 34 id. 283, and 1 Greenleaf on Evidence, sec. 462, where the author says: "It is not enough to

ask the witness the general question whether he has ever said so and so, nor whether he has always told the same story."

It is also claimed that the court erred in allowing a witness to testify what the driver said after the car stopped. When the statement was made, the car had just stopped, and the boy was still under the car. Under such circumstances, what was then said was admissible as a part of the *res gestæ*.

It is also insisted that the court erred in giving instructions for the plaintiff, and refusing certain of defendant's instructions. The court gave three instructions on behalf of the plaintiff and nine on behalf of the defendant, and refused five asked by the defendant. As to those given for the plaintiff, we find nothing calculated to mislead the jury in them. As to the defendant's refused instructions, it will serve no useful purpose to enter upon a critical examination of them. As the jury were so fully instructed as to the law involved in the case in the instructions which were given on behalf of the defendant, the giving of other instructions was not required.

Other questions of minor importance have been raised and discussed in the argument, but their consideration and decision will be of no benefit on another trial, and it will not be necessary to consume time in their discussion.

For the error indicated, the judgments of the Appellate and circuit courts will be reversed, and the cause remanded for another trial.                    *Judgment reversed.*

Mr. JUSTICE SHOPE, dissenting.

Mr. JUSTICE MAGRUDER: I dissent from this judgment. The case has been tried four times. On three trials, the verdict was in favor of the plaintiff a boy seven years old. The record is singularly free from error. It was shown by abundant evidence, that the driver, in a conversation at a particular place, virtually admitted his drunkenness when the accident occurred. There is nothing to show at what date the first trial took place. The time is sufficiently indicated, whether it was before or

after the first trial. The driver denies that he ever at any
time said what he is charged with having said. In my opinion
he was successfully contradicted, and the impeaching testi-
mony was properly admissible even under a strict construction
of the rule. The reason of the rule is that, if the question is
general, the witness may not remember what he has said,
whereas, if his attention is directed to particular circumstances
and occasions, he may recollect and explain what he has said.
(1 Greenl. on Ev. sec. 462.) Here, his attention was directed
to a particular place and to a time near the time of the first
trial. His answer was evasive, referring as it did to the time
of the accident, and not to any time either before or after the
first trial.