## Dena Reiten v. Lake St. Elevated R. R. Co.

1. PASSENGER AND CARRIER—*Where the Relation Does Not Exist.* —Where there is no evidence that the plaintiff had paid her fare or had a ticket, but only that she presented herself on the station platform and attempted to get upon defendant's train, the relation of passenger and carrier is not shown to exist.

2. PRACTICE—*Refusal of Court to Allow Proof of Res Gestae.*—The refusal of the court to allow the plaintiff to prove what the conductor said in response to the statement of a witness, at the moment the accident occurred by which she was injured, was erroneous.  It was part of the *res gestae* and was competent.

**Action in Case,** for personal injuries.  Appeal from the Circuit Court of Cook County; the Hon. ELBRIDGE HANECY, Judge, presiding. Heard in this court at the March term, 1899.  Reversed and remanded. Mr. Justice ADAMS dissenting.  Opinion filed November 27, 1899.

**Statement by the Court.**—Appellant, on July 29, 1896, was very seriously injured in her back and had both ankles broken by falling while attempting to board one of appel- lee's trains at Sheldon street station, Chicago, the train being operated on an elevated railroad.  She fell from the platform of the station to the ground below.  She brought suit to recover for her injuries, and alleged in her declaration, con- sisting of three counts, in each, that she paid her fare and presented herself as a passenger on a train of appellee which had just arrived at the station.  In the first count the negligence stated was, in substance, that the servants of appellee caused the train to be suddenly and violently started and moved, and did not stop the train a sufficient length of time to enable her to board the same; in the sec-

ond count, that upon the arrival of the train at the station, and after it had stopped, and while she was attempting to board the same, appellee's servants carelessly and negligently caused the train to be started and moved without having delayed a sufficient length of time for her to get on board, although she was waiting at the station before the arrival of the train and used all due haste to board the same on its arrival, and that by starting said train before she was enabled to board it she lost her foothold and fell to the street below; and in the third count, that after stopping the train at the station it was started up before she was able to board the same, and before closing the gates to the train, although she was at the station before the train arrived, and used customary and ordinary diligence in attempting to board the same on its arrival.

The plea was not guilty, and the hearing before the court and a jury resulted in a verdict for the appellee, which was directed by the court at the close of appellant's evidence. A judgment was entered upon this verdict, from which this appeal is taken.

Appellant testified that she waited on the platform of the station about five minutes for the train to come; that it came slowly; was coming to a stop; that she ran beside the middle car; saw a man running in the same direction and getting on the middle car; that he got on in front of her, and she could have touched him with her hand; that the gate was wide open; that the car stopped and as she was getting on she had her hand on the handle-bar; that she couldn't say for sure that the car was exactly standing still, it might have been " the least little moving," but as she put her foot on the platform of the car it just started out; that when she was getting on, it was about eight or ten feet from the east end of the platform of the station; that she felt the car going; that it started as if it had started up; that she 'couldn't say the car might have been a little in motion when she got her foot on, and when she got her foot on, the car went right on; also that the conductor was standing by the gates.

On cross-examination she testified that she started to run along the middle when it, the car, was running very slowly; that she did not start to get on the car before it stopped.

In response to questions by the court she said that when she took hold of the rail of the car she was running; that she ran all the time; was running the same way the car was; that as quick as she got in reach of the rail she grabbed it with her left hand and at the same time put her left foot on the platform, and that the car started quick as she put her right foot on the car, and the only thing she knew after that she felt her right foot go down and she went down to the street; also that the car came to a stop before she was getting on.

She also further testified, on cross-examination, that when she stepped on the car that if it had started it " might have been moving just very slowly; " also, that the car started quick as she put her right foot on the car, and the only thing after that she knew was that she felt her right foot go down.

Arthur English, a witness for appellant, testified that he got on the second car of the train; that the trained pulled up pretty far toward the east end of the platform; he put his foot on the platform, and " the conductor rung and signaled with the bell cord for them to go ahead. At that time I had only one foot on the car; the other foot was on the platform. I was the first one to get on the car; immediately after me came this lady. As I was stepping from the platform to the car, toward the rear platform of the rear end of the smoking car, this lady followed me; she followed me from the bench where she sat. I got on the car and he gave the signal to go ahead when I had one foot on the car; the lady was right behind me. The gates were open at that time. The train started with a jerk; the next I saw of her she was holding on that rail with one hand and running along the platform. I should say it was eight or ten feet from the platform to the place where she attempted to get on the platform. Of course when I was boarding the train I could not see backward. I saw her fall."

He also testified that the gates were not shut at the time; that the conductor shut them when she fell; that they were about eight inches ajar when she fell, and that after she fell the conductor shut the gates.

On cross-examination this witness testified that he did not see the gates open; that he started to board the train before it came to a standstill; that the car was moving when he got on, and was " moving slow; " that he started to get on before the car stopped; that he walked as he went to get on the car; that as he first went onto the platform of the car it was in motion; that it did not stop.   " I stepped on before it stopped.   It stopped after I stepped on.   *   * After the conductor gave the signal to stop, that was when the lady fell to the ground; that was when the car came to a stop.   The car never did stop until the lady fell. It slackened up—went slower than you would walk."   The witness declined to state the speed of the train, but when asked by the court to give his best judgment, answered, " Pretty near to a stop.   I am no judge of how many miles an hour it was going—just about half as fast as I can walk." He further testified that the conductor was standing midway between the cars at the time witness got on; that the conductor had one hand on the lever of the second car gate; that conductor rang the bell, and when the bell rang witness had one foot on the car and the other on the platform of the station.

This witness, on direct examination, was asked what he said to the conductor at the time he saw appellant fall.   The question was objected to, the objection sustained and an exception preserved.

On cross-examination he was asked what he did at the time with reference to the accident, to which he replied:

" A.   Do you mean after the train stopped ?

The Court:   What did you do when you saw the girl ahold of the car there and her foot on it; did you go to the girl's assistance ?

A.   I told the conductor, ' There she is, and, there, she is going down.'   I did not go after the girl."

On re-direct examination the following occurred:

" Q. (by appellant's counsel): When you told the conductor that she had gone down, what did he say ?

(The court raised an objection to this question, and said it was improper for him to answer.)

Mr. Jones: Are we at liberty to say to the court what we expect to prove by this witness ?

The Court: No.

(Exception by plaintiff.)"

N. M. Jones, attorney for appellant; Jones & Lusk, of counsel.

Clarence Knight and William G. Adams, attorneys for appellee.

Mr. Justice Windes delivered the opinion of the court.

It is claimed on behalf of appellant that the relation of passenger and carrier existed between appellant and appellee, but the evidence fails to support this contention. There is no evidence that appellant had paid her fare or had a ticket, but only that she presented herself on the station platform and attempted to get upon appellee's train. We are not prepared to hold that such fact showed the relation of passenger to appellee, and therefore the authorities cited in that behalf and argument made are not applicable.

It is also claimed that, upon the evidence before the court, the court erred in refusing to submit the case to the jury. Whether or not this position is tenable, it seems unnecessary for us, on this record, to decide.

For appellee it is contended that appellant was guilty of contributory negligence because she attempted to get on the train while it was moving, and for that reason there was no error in taking the case from the jury. This question it is also unnecessary to decide on this record.

We are of opinion that the ruling of the court in refusing to allow appellant to prove what the conductor said in response to the statement of the witness English, at the moment the accident occurred, as follows, " There she is, and there she is going down," was erroneous. It was part of the *res gestæ*, and was competent. O. & M. R. R. Co. v.

Porter, 92 Ill. 439; Springfield v. Welsch, 155 Ill. 511; Quincy v. Gunse, 137 Ill. 264; Springfield Ry. Co. v. Hoeffner, 175 Ill. 634–43, and cases there cited.

We are unable, by reason of the court's refusal to allow appellant's counsel to state what he expected to prove by the witness, to tell what the evidence was, but we may assume that it would show facts tending to prove appellant's right to recover. It is no justification of the court's ruling that the evidence was excluded on re-direct. Appellant attempted to put it in on her direct case, but the court ruled it out. A part of the evidence, being the words of the witness to the conductor at the instant of the accident, having been brought out on cross-examination, appellant was entitled to show what the conductor said in reply. 1 Wharton on Evid., Secs. 572 and 573; Marsullo v. Met. St. Ry. Co., 52 N. Y. Sup. 286; Dutcher v. Howard, 47 Pac. Rep. 28.

For the error in excluding this evidence, the judgment is reversed and the cause remanded.

MR. JUSTICE ADAMS dissenting.

I am of the opinion that the judgment should be affirmed.