# CASES

IN THE

# APPELLATE COURTS OF ILLINOIS.

## FOURTH DISTRICT—AUGUST TERM, 1902.

### Muren Coal & Ice Co. v. Herbert Howell, Adm'r.

1. EVIDENCE—*Of Custom or Practice.*—In offering evidence of a general practice or custom the inquiry should not be limited within the arbitrary lines of a mere political subdivision of the state.

2. SAME—*Rule as to the Res Gestæ.*—No inflexible rule has been or can be formulated fixing the exact time within which a statement must be made to make it a part of the *res gestæ.*

3. INSTRUCTIONS—*Meaning of the Doctrine Which Holds an Instruction Vicious, When it Attempts to Summarize the Facts or Elements in. a Case Essential to a Recovery, but Fails in Some Important Particular.*—The doctrine which holds an instruction vicious, when it attempts to summarize the facts or elements in a case essential to a recovery, but fails in some important particular, does not apply to an instruction which merely fails to embody in it evidence tending to establish a distinct antagonistic theory. All the law requires is that an instruction, based upon some particular hypothesis warranted by the evidence, which undertakes to summarize the elements in the case essential to a recovery upon that theory, must not omit any matter essential to that theory.

4. MASTER AND SERVANT—*A Risk Resulting from the Negligence of the Master, or from a Failure of the Master to Perform Some Duty, is Not an Assumed Risk.*—A risk resulting from the negligence of the master, or from a failure of the master to perform some duty, is not an assumed risk on the part of the servant, nor is it a risk incidental to the employment.

5. MINES AND MINING—*Compliance with the Statute Does Not Relieve from Common Law Duties.*—Compliance with the statute as to places of refuge, does not relieve the owner and operator of a mine from all his common law duties with reference to safety in its entries.

(1)

The purpose of the statute was not to abrogate the common law as to such duties but to impose an additional one.

6. SPECIAL INTERROGATORIES—*Not Calling for Any Answer as to a Controlling Ultimate Fact, Properly Refused.*—A special interrogatory which does not pertain to any issue in the case, nor call for an answer as to any controlling ultimate fact involved, is properly refused.

**Trespass on the Case.**—Death from negligent act. Appeal from the Circuit Court of St. Clair County; the Hon. MARTIN W. SCHAEFER, Judge presiding. Heard in this court at the August term, 1902. Affirmed. Opinion filed March 2, 1903.

WISE & McNULTY, attorneys for appellant.

WEBB & WEBB and DILL & WILDERMAN, attorneys for appellee.

MR. JUSTICE CREIGHTON delivered the opinion of the court.

This was an action in case in the Circuit Court of St. Clair County, by appellee against appellant, to recover damages resulting from the death of appellee's intestate. Trial by jury. Verdict and judgment in favor of appellee for $5,000.

The amended declaration upon which the case was tried consists of two counts, which as abstracted by appellant's counsel are as follows:

"The first count alleges, as the previous declarations had, that the defendant was the owner of a coal mine and operating it; that August Schmidt was in the employ of the defendant as a coal driver, his duties requiring him to haul empty coal cars from the bottom and distribute them throughout the coal mine wherever needed and to pull loaded coal cars from the entries and rooms to the bottom of the shaft so that they might be hoisted; that there were, prior to said date, a large number of entries and rooms in said coal mine, with laid tracks for the transportation of coal; that it was the practice of defendant and consistent with good mining to clear away and remove slate, clod and other substances from both sides of the track therein for a sufficient distance to allow drivers hauling coal over said railway to pass around the sides of the coal cars on said railway tracks, wherever there was room between the sides of said railway track and the sides of the entry, without coming in contact with slate, dirt, etc.,

thereby endangering such drivers while in the discharge of their duties in said coal mine; that said drivers had knowledge of said practice, relied on it and expected the defendant to keep and maintain the said railway track free and clear of obstructions. On the 28th day of March, 1900, a large lot of slate, clod, dirt, etc., fell from the roof of the eighth west entry leading off the main south entry in said mine on the railway track at a point where there was ample room between said railway track and the 'rib side' of said entry to allow the drivers to pass between said coal cars on said railway track and the 'rib side' of said entry, and obstructed all that portion of said entry lying between said railway track and the 'rib side' of said entry, so as to prevent drivers hauling coal therein from passing around coal cars on said side of said railway track, which rendered said railway track unsafe and dangerous to drivers hauling coal through said entries over said railway track; that defendant had notice of the fall of said slate, and that same was an obstruction to that part of the said entry and the said railway track, and would prevent drivers passing through said entry from passing around coal cars on said track at that point on that side of said entry, and that it rendered said entry unsafe and dangerous; that defendant failed to remove said obstruction and abate said dangerous conditions, but negligently permitted the same to remain there until said August Schmidt was injured, well knowing said obstruction rendered said entry unsafe and dangerous; that August Schmidt on said date was hauling two loaded coal cars along said railway track to said entry, exercising due care, and without notice or knowledge that said slate, etc., had fallen from the roof of said entry, or that said entry was obstructed, and that when he reached said obstructions he discovered a coal car on said railway track immediately in front of him, and seeing that a collision between said cars he was hauling and said car standing on said railway track was inevitable, and that he would be likely to be injured, attempted to escape said collision and injury by trying to get off said railway track on the side so obstructed, but came in contact with the slate and other obstructions which had fallen from the roof and which prevented said August Schmidt from escaping in that direction, and threw him back on the railway track between said cars and allowed said cars to crush him, from the effects of which he afterward died; that the death of said August Schmidt was the direct result of the negligence of defendant in permitting said railway track and entry in

said coal mine to be and remain obstructed as aforesaid, and alleges administration and next of kin, etc.

"The second count alleges as the other counts, that the defendant was the owner of a coal mine and operating it, and then avers there were a large number of railway tracks in certain entries, cross-cuts and rooms, used by the defendant in transporting coal by means of draught animals and coal cars in charge of a driver; it was the duty of the defendant to keep said roadways and railway tracks over which the driver was compelled to pass in a reasonably safe condition and free from obstructions; that the defendant negligently allowed and permitted a coal car to stand on a certain railway track, and a large amount of coal, slate, etc., to remain on the side of said railway track near said standing car, obstructing the same and making it dangerous and unsafe for the driver to pass there while in the discharge of his duties; that on the 28th day of March, 1900, one August Schmidt was in the employ of the defendant as a driver in charge of a mule and box cars in said coal mine; his duties were to drive said mule and cars over said railway tracks, and while he was hauling two loaded cars along said railway track in said mine near said obstruction, in the discharge of his duty, and with the exercise of due care and without notice of said obstruction near said standing car, said two cars being hauled collided with said standing car, catching him between said two cars and said standing car, crushing and injuring him so that he died from his injuries; that upon seeing said standing car, said August Schmidt undertook to escape said collision by going from said railway track on the side thereof that was so obstructed, and was thereby prevented and thrown back upon said railway track and between said cars by reason of said obstruction, and was killed. Then follows an averment that plaintiff is administrator, and that he left next of kin, etc."

To this amended declaration appellant pleaded the general issue, the statute of limitations, and a plea of former acquittal as to the second count. A demurrer was sustained to appellant's plea of the statute of limitations, and a replication was filed to its plea of former acquittal, denying that there had ever been an adjudication upon the cause of action or issues presented in the count pleaded to.

The action of the trial court in sustaining the demurrer to appellant's plea of the statute of limitations is not

assigned as error, nor is any question raised upon this record as to the plea of former acquittal or the replication thereto. The case is before us as though the pleading consisted only of the last amended declaration, and plea of not guilty.

The evidence is quite voluminous, the record covering almost 400 pages. We deem a detailed discussion of it unnecessary. The evidence as a whole, with the reasonable inferences deducible therefrom, fairly and clearly tends to prove : That appellant owned and operated a coal mine, in the underground workings of which there were many entries and rooms; that it was the practice, in the operation of the mine, to clear away the falling slate and debris from both sides of the track wherever there was sufficient room for a driver to go in case of danger, and this work was usually performed by a servant of appellant, denominated a " slate shifter; " that deceased knew of such practice, and was governed in his conduct thereby; that the part of the entry in which he was injured, was new; that two days before the injury a large quantity of slate and other substances had fallen from the roof, completely blocking the entry and extending for a distance of about twenty feet lengthwise of it; that the superintendent saw this condition, and with full knowledge of it, left the mine and went to Springfield; that two miners from an adjacent room and another employe of appellant shoveled the debris off the track sufficiently to allow cars to pass along it, but in doing so left slabs of slate and part of the debris standing and piled against the wall on the rib side of .the track, obstructing the space between the track and the wall; that deceased had never been in that part of that entry, and knew nothing of the conditions, when, on March 28, 1900, he was directed to go in there and bring out some cars; that there was no light except from his lamp and from that of a miner sitting on one side of the entry, some distance from him; that the darkness was such as to greatly obscure the surroundings; that when he had taken his mule in and hitched onto two cars and started out, on a down grade,

he collided with a car which another driver had left on the track, and discovering his peril as the cars were about to strike, he attempted to escape on the rib side, but was prevented by the slate and debris which obstructed the space on that side, and before he could cross to the opposite side was caught and crushed between the cars. We are of opinion that the evidence warrants the conclusion that deceased was in the exercise of due care and caution for his own safety, and that it sufficiently sustains both counts of the declaration. There was no error in the refusal of the trial court to direct a verdict in favor of appellant.

Counsel contend that the court erred in sustaining appellee's demurrer to appellant's plea of statute of limitations. As we understand the record, this question is not before us for determination. This action of the court is not assigned as error, nor does any assignment of error include it. No assignment in the list could include it except the eighteenth—"The court erred in overruling the motion for a new trial;" and an examination of that motion discloses that the question was not raised there. This court can consider only such errors as are properly assigned upon the record.

It is insisted that the trial court erred in refusing to admit certain evidence offered on behalf of appellant, as to the practice or custom in other mines. The law upon that subject is, that where defective construction or defective maintenance of the place where the work is to be performed, or the like, is charged as the cause of the injury, the defendant may show that the construction, maintenance or condition in question is in accordance with those in general and common use. The second count of the declaration charges such state of case as would make proper evidence of general practice or custom with respect to the matter charged, relevant and proper.

The rulings complained of were as to certain questions put to two witnesses—appellant's mine manager, and a mine inspector. After the mine manager had testified that he had worked in England, Colorado, Kentucky, in various

counties and places in Illinois, and in mines similar in character to that of appellant, and that he was familiar with the general methods of operating mines, he was asked:

"Q. I will ask you to state what knowledge, if any, you have of any rule or practice in any of the mines of this county, to keep, or not to keep, the gob or the rib side * * * a certain distance from the cars?"

To this question the court sustained an objection. The next question was:

"Q. I will ask you, in good mining, following the practice and usages in good mining, what space, if any, is usually left along the entries there for the drivers on either side?"

To this he answered:

"I do not know of any rule in good mining that would bear on that point at all."

And the next:

"Q. You may tell whether or not, from your experience and knowledge, it was customary and good mining to leave that the way it was?" "A. Yes, sir."

It will be observed that the question to which the objection was sustained did not call for the general practice or general usage or custom, but only for that of a particular county. In a case of this character, the inquiry should not have been limited within the arbitrary lines of a mere political subdivision of the state. This was enough to condemn the question, and further, the questions and answers not objected to, gave the jury all the information the witness possessed on the subject. The question put to the other witness was almost identical with the one first above quoted and contained the same vice—limited the inquiry to a particular county. We are of opinion there was no substantial error in the rulings of the court with respect to these questions.

A witness who was within twelve to fourteen feet of the place of the collision at the time of the injury, testified:

"Then we heard him hallooing, 'O God, O God!' We ran. * * * I got hold of him. He was right at the

end of the box where he had struck. He says 'O God, I couldn't get out of the road!' and I says, 'Why didn't you go to the other side?' and he says, 'I tried to, but couldn't get out, and before I could clear my road behind the mule, it caught me.' We held him there a second or two and then led him up against the gob. From the time he hallooed 'O God' until I got there could not have been over two seconds."

This evidence was objected to and the objection overruled.

No inflexible rule has been or can be formulated fixing the exact time within which a statement must be made to make it a part of the *res gestæ*. The evidence in the case at bar shows that the shock occasioned by the collision, the exclamations of pain, the effort to render help to the injured party, and his statements "explaining and characterizing the manner in which the accident occurred," were all substantially concurrent. There was no time for deliberation of fabrication. The case of Springfield Ry. Co. v. Hoeffner, 175 Ill. 634, is "on all fours" with the case at bar as to the feature of *res gestæ*. There, as here, the statements complained of were made by the injured party in response to a question asked by one who had come to her assistance. The following are a few of the many other Illinois cases bearing upon the question: Quincy Horse Ry. Co. v. Gnuse, 137 Ill. 264; Springfield Consolidated Ry. Co. v. Welsch, 155 Ill. 511; Reiten v. Lake St. El. R. R. Co., 85 Ill. App. 661; E. St. L. Connecting Ry. Co. v. Allen, 54 Ill. App. 27. We are of opinion the evidence was properly admitted as part of the *res gestæ*.

Many instructions were asked by the respective parties —too many; and many were given; some were refused. Appellant's counsel complain of all that were given on behalf of appellee, and of the refusal of the thirty-sixth, thirty-eighth, fortieth and forty-second asked by appellant. They insist that appellee's instructions ignore the negligence charged in the declaration; that they purport to sum up the case and ignore appellant's defense; that they ignore the element of assumed risk, and that the case at

bar falls in that class where omissions or defects in one instruction can not be cured by another.

The instructions are so long and so numerous that we can not devote the requisite space for copies in full and separate discussion. They do not ignore the negligence charged in the declaration; one of them refers for such negligence directly to the declaration, and the others are based wholly upon hypothesis of the negligence charged in the declaration. They are not in violation of the true rule as to summarized facts in an instruction. The true rule is as laid down in Springfield Ry. Co. v. Hoeffner, 175 Ill. 634 (638).:

" The doctrine which holds an instruction vicious when it attempts to summarize the facts or elements in a case essential to a recovery, but fails in some important particular, does not apply to an instruction which merely fails to embody in it evidence tending to establish a distinct antagonistic theory. 'All the law requires is, that an instruction, based upon some particular hypothesis warranted by the evidence, which undertakes to summarize the elements in the case essential to a recovery upon that theory, must not omit any essential matter,'" *i. e.*, must not omit any matter essential to that theory.

The element of assumed risk or risks incidental to the employment, is not involved in appellee's theory of the case, as disclosed in his declaration, evidence or instructions. His case is based upon charges of negligence; his instructions are framed upon that theory, and the law is:

"A risk resulting from the negligence of the master, or from a failure of the master to perform some duty, is not an assumed risk on the part of the servant, nor is it a risk incidental to the employment."

The law presumes that the master will not be guilty of negligence, and that he will perform his duty; and warrants the servant in relying and acting upon this presumption, in the absence of notice to the contrary. The theory upon which appellant's defense of assumed risk or risks incident to the employment is based, is wholly distinct from, and antagonistic to the theory of negligence and failure to perform duty, upon which appellee's case is

based. Appellant's defense of assumed risk is based upon
the hypothesis that there was no such negligence and no
such failure on the part of appellant as is charged in the
declaration. It is not technically a defense at all, in a case
of this character, because it can not be entertained so long
as there is negligence, and where there is no negligence
the defense is complete without it. It was not error to
omit this element from appellee's instructions; and further,
the jury were fully instructed as to the law upon that sub-
ject in appellant's twelfth and thirteenth instructions.

The instructions are not repugnant and there is nothing
in the case to take it out of the general rule requiring all
the instructions to be considered together as a whole—as
one series. When these instructions are so considered,
they state the law applicable to the pleading and evidence
in the case with substantial accuracy and are not mislead-
ing, to the prejudice of appellant.

As to appellant's refused instructions, No. 38 is as fol-
lows:

" 38. The court instructs the jury that under the laws
of the State of Illinois, a coal mine company is not required
to leave space on each side of its road at all places, suffi-
ciently large for men or animals to go in case there is an
obstruction on the track. It is sufficient that in mines of
this class there are entries from which rooms are driven at
regular intervals, not exceeding twenty yards. And in this
case if you find from the evidence that the defendant, at
the entry where deceased was injured, had driven rooms
at intervals of twenty yards or less, and that the entrances
to said rooms were kept clear of obstructions, then the
defendant was not required to leave any other space along
its roadway."

This instruction was properly refused. Compliance with
the statute as to places of refuge, does not relieve the
owner and operator of a mine from all of his common law
duties with reference to safety in its entries. The purpose
of the statute was not to abrogate the common law as to
such duties but to impose this additional one; and further,
the instruction is applicable to both counts of the declara-
tion and it is conceded it is not good as to the first.

The fortieth instruction refused, assumes as matter of law that leaving the slate piled up between the rib and the track from Monday morning to Wednesday, without notifying deceased or attempting to notify him, was not negligence. It is not apparent to us that all disinterested reasonable minds would assent to this as true in fact, and therefore the trial court properly refused to give it as true in law.

The forty-second, refused, is as follows:

" The court further instructs you that if you believe from the evidence that the distance between the track and the rib varied in defendant's mine, and that the drivers in said mine did not rely upon finding the space between the car and the rib sufficiently great for them to go to in case the track was obstructed, then the plaintiff has not proved the first count of his declaration, and your verdict should be for defendant."

This instruction was properly refused. The declaration does not aver that the space between the car and the rib was at all places sufficiently great for the driver to go to in case the track was obstructed, nor that the drivers relied upon its being so. It charges that it was the practice to clear away debris " from both sides of the track for a sufficient distance to allow drivers hauling coal over said railways to pass around the sides of the coal cars on said railway tracks, wherever there was room between the sides of said railway track and the sides of the entry" (the rib), and that the drivers had knowledge of such practice and relied upon it. It only charges that they relied upon finding such condition " wherever there was room " between the track and the rib for the driver to go in case the track was obstructed, and the evidence tends to prove that at the place of the injury there was sufficient room. And further, this instruction calls for a general verdict for defendant, when it is not claimed that the instruction or the subject-matter of it has any reference or application to the second count of the declaration.

Counsel present neither argument nor authority in support of their thirty-sixth instruction, and we do not deem

it our duty, in such case, to discuss it. It was properly refused.

It is urged that the trial court erred in refusing to submit to the jury the following special interrogatory on behalf of appellant:

"Was it the practice in the mine of the defendant to leave at some places space between each side of the car sufficient for a driver to go from one side to the other, and at other places not to leave sufficient space on both sides of the car for the driver to go?"

This interrogatory does not pertain to any issue in the case, nor call for any answer as to any controlling ultimate fact involved.

We find no such error in this record as would warrant a reversal of the case.

The judgment of the Circuit Court is affirmed.