DAVAULT v. PARKS.

4-3717

Opinion delivered February 18, 1935.

John W. Nance, C. D. Atkinson and C. W. Atkinson, for appellants.

J. Frank Holmes and Karl Greenhaw, for appellees.

HUMPHREYS, J. This appeal involves the sole question of whether the circuit court of Washington County erred in refusing to submit the issue to the jury of whether appellee, J. C. Parks, used undue influence upon Mrs. Sophie Maddox in procuring her to make the kind

of will she did, which was probated as her last will and testament.

The will was attacked by her collateral heirs on two grounds, mental incapacity and undue influence.

The court submitted the issue of incapacity to the jury, and refused to submit the issue of undue influence to them because, in his opinion, there was no substantial evidence introduced by the contestants tending to show that any undue influence had been exerted upon the testatrix by J. C. Parks to make the kind of will she did.

The jury returned a verdict in favor of the validity of the will, and contestants have appealed to this court and urge a reversal of the judgment upon the ground that the court erred in refusing to submit the issue of undue influence to the jury.

The will in question was executed on the 6th day of May, 1933, and in it she bequeathed most of her property to the Protestant churches, the cemetery organization and the school district, all in Prairie Grove, her home town. She had theretofore executed a will in which she bequeathed a part of her property to her collateral heirs and the balance to certain institutions and organizations. Just what caused her to destroy the first will and make the second does not appear in the record.

J. C. Parks had been her trusted friend many years, and, when she became old and feeble, he attended to all of her important business under power of attorney, such as lending and collecting her money. He frequently called at her home and had private conversations with her. When she decided to make a new will, she informed J. C. Parks of that fact, and what disposition she wanted to make of her property and requested him to see Senator R. J. Wilson of Fayetteville and get him to prepare the new will. He did so and during a social visit to his friend, Karl Greenhaw, he showed the will Senator Wilson had drawn to him and, after reading it, Greenhaw remarked that it was not necessary to the validity of the will for her to give $1 to each of her collateral heirs, and, that on account of the large number of them living in separate localities, it might be difficult for the executors to contact them and pay each $1. Parks took the will

drafted by Senator Wilson back to Prairie Grove and showed it to Mrs. Maddox and informed her of what Karl Greenhaw had said. She then directed him to have a new draft made leaving out all the $1 bequests. He returned to Fayetteville and, not finding Senator Wilson, called on Greenhaw, who directed his stenographer to re-write it on the typewriter leaving out the $1 bequests. After she did so, Parks took the will back to Prairie Grove and left it at the bank, where it was later executed in the presence of subscribing witnesses. The will was left in the possession of Parks until the testatrix died, after which it was regularly probated. Parks was named in the will as one of the executors and qualified and is acting in that capacity. The record reflects that Parks was not a member of any of the churches or other organizations named as beneficiaries in the will. Parks testified that he used no influence whatever to induce Mrs. Maddox to change her will.

About the only circumstance in the record from which the contestants might suspect he unduly influenced Mrs. Maddox is that she trusted her business to him and frequently conferred with him in private. As to what occurred in their conferences is mere conjecture on their part. A more reasonable conjecture might be indulged that their private conferences concerned the business matters he was attending to for her.

There is no substantial evidence in the record, under the rule of law applicable, upon which the court should have submitted the issue of undue influence to the jury.

The rule of law alluded to is clearly stated in the case of *Alford* v. *Johnson,* 103 Ark. 236, 146 S. W. 516, as follows:

"To establish a charge of fraud or undue influence in the execution of a will, it must be established: (1) That deception was practiced or influence exercised; (2) That the fraud or undue influence was effectual in misleading or coercing the testator in the execution of the will. The fraud or undue influence which is required to avoid a will must be directly connected with its execution and must be, not the legitimate influence which springs from natural affection, but the malign influence

which springs from fear, coercion, or other causes that deprives the testator of freedom in the distribution of his property. Before a will can be invalidated upon the ground of undue influence, there must be testimony proving or tending to prove that the influence was of such character as to destroy the testator's free agency, in effect substituting another's will in the place of his own, and the influence must be directed toward the object of procuring a will in favor of particular parties. It is not sufficient that the testator was influenced by the beneficiaries in the ordinary affairs of life or that he was surrounded by them in confidential relations with them at the time of its execution."

No error appearing, the judgment is affirmed.