Opinion delivered April 20, 1953.

*Eugene Coffelt,* for appellant.

*Eli Leflar,* for appellee.

ROBINSON, Justice. The appellant, Mrs. Mabel Kyle, is contesting the will of her father, Robert Washington McConnell, who died on the 11th day of May, 1951, at the age of 81 years. The appellees, Donald G. Pate and Bessie Pate, are the beneficiaries under the will which was sustained by the probate court.

Testator McConnell moved to Arkansas from Montana about 1935 and bought a house and nine lots in the city of Rogers. His wife died in 1941. In 1948 his daughter, Mrs. Kyle, appellant herein, visited him at Rogers and at that time McConnell made a will in which Mrs. Kyle and her son Robert S. Kyle were named beneficiaries.

In November, 1949, the appellees herein, Donald and Bessie Pate, along with their five children, moved into

McConnell's home with him. On the 3rd day of January, 1950, McConnell and the Pates entered into a contract providing in effect that for the consideration of the Pates' continuing to live in McConnell's home and looking after him, and the payment by the Pates to McConnell of $2,100, payable in monthly installments, McConnell would leave the property to the Pates and also transfer to the Pates his 1932 model Chevrolet automobile. It was further provided that in the event of McConnell's death, the balance owed on the $2,100 should be paid to McConnell's daughter, Mabel Kyle, the appellant herein. On the same day McConnell executed a deed conveying the property to the Pates, reserving the right to make it his home for the balance of his life, and further providing that the grantees were to take care of the grantor in good and proper manner during the remainder of his life.

On the 18th day of April, 1950, the parties entered into a new contract in lieu of the one executed on January 3, 1950, the new contract being to the same effect as the old one with the exception that no monthly payments were to be made to McConnell during his lifetime, but upon his death the $2,100 was to be paid to Mrs. Kyle in monthly installments.

Mrs. Kelley, one of McConnell's neighbors, obtained from him the contract he had made with the Pates and sent it to Mrs. Kyle in Montana. Mrs. Kyle sent her 27 year old son to Rogers to see about the matter, and after he had been there for some weeks, Mrs. Kyle herself came to Rogers and a few days thereafter caused suit to be filed to set aside the contracts and deed. On June 14, 1950, a few days before the trial of the case, McConnell executed a new will naming the Pates beneficiaries thereunder. Upon a trial of the case the court entered a decree setting aside the contracts and deed for the reason that undue influence had been practiced upon McConnell, and for the additional reason that because of undue influence McConnell was incompetent to execute the instruments. The decree also provides: "The court further finds that the will of Robert W. McConnell wherein he willed his estate to the defendants,

Donald Pate and Bessie Pate, should be dissolved and set aside for the same reason that the will was obtained under undue influence, creating the plaintiff Robert W. McConnell incompetent at the time the instrument was executed." The suit was filed in the name of Robert W. McConnell by Mabel Kyle as next friend and Mabel Kyle in her own right.

On May 11, 1951, McConnell died and the will he had executed on the 14th day of June, 1950, was admitted to probate. Shortly thereafter Mrs. Kyle filed a petition stating that she desired to resist the probation of the will for two reasons, first that the will had been nullified by the decree of the Chancery Court on July 6, 1950; second, that the will was invalid because its execution had been obtained by undue influence practiced upon McConnell by the Pates, that duress and threats were used by the Pates in causing McConnell to execute the will, and that McConnell was incompetent at the time he signed the will.

After hearing all the evidence, it was the judgment of the probate court that the evidence was not sufficient to show that the testator was incompetent at the time of the execution of the will, or that the will was the result of undue influence.

There are two issues on appeal; first, did the Chancery Court have jurisdiction to declare the will void, and is the issue of the validity of the will therefore *res adjudicata?* Second, does a preponderance of the evidence show that the testator was incompetent at the time of the execution of the will or that the will was made as a result of undue influence? We will discuss the issues in the order named.

First, the Chancery Court did not have jurisdiction to adjudicate the validity of the will. In *Graham* v. *Graham,* 175 Ark. 530, 1 S. W. 2d 16, Chief Justice Hart said: "Even a court of equity could not set aside a will on the grounds alleged. The reason is that equity has no jurisdiction to set aside a will for fraud in obtaining it. *Ewell* v. *Tidwell,* 20 Ark. 136. In *Gray* v. *Parks,* 94 Ark. 39, 125 S. W. 1023, it was again held that

a court of equity has no jurisdiction to determine the validity of a will. The court said that the remedy at law for setting aside a will on account of any fraud or undue influence in procuring it was complete. The reason is that, under our Constitution, such jurisdiction is vested in probate courts. This rule was recognized in *Dunn* v. *Bradley*, 175 Ark. 182, 299 S. W. 370, where it was held that equity had jurisdiction to set aside the judgment of a probate court admitting a will to probate only where fraud was practiced upon the court in obtaining the judgment.''

The Chancery Court not having jurisdiction to determine the validity of the will in the first instance, its action in that respect is not *res adjudicata*. *Axley* v. *Hammock*, 185 Ark. 939, 50 S. W. 2d 608. It is not necessary to decide whether the validity of a will can be contested during the lifetime of the testator.

Next, appellant contends a preponderance of the evidence shows that the testator was incompetent or that the will was the result of undue influence. The trial court held otherwise, and we do not find that the decision is contrary to the preponderance of evidence. The appellant, Mrs. Kyle, gave testimony from which there may be an inference that undue influence was used by the Pates; also some of the testator's neighbors gave similar testimony; however, appellee presented evidence of greater weight going to show that Mr. McConnell was of sound mind and his will was not the result of undue influence. Dr. Stewart M. Wilson, a member of the Benton County Medical Society, Arkansas Medical Society, American Medical Association, and American College of Physicians, at the request of the Chancery Court in 1950 examined McConnell and testified that Mr. McConnell's mentality and memory were unusually clear and that he was competent to handle his own affairs. Dr. Wilson said he thought McConnell knew what he was doing and that he could discover no evidence of any insanity.

Dr. R. M. Atkinson, who has practiced at Bentonville for 37 years, also examined Mr. McConnell on

July 6, 1950, and stated that he was exceptionally alert for a man of his age, and that in his opinion McConnell was able to handle his own affairs and make whatever disposition of his assets he might see fit. He had a mental capacity to know the nature and extent of his property, knew the close members of his family, and knew and understood the nature and consequences of his acts.

G. S. Seals, a member of the Arkansas Bar, talked with Mr. McConnell about two hours in June, 1950. Mr. McConnell told him that the Pates had been good to him; Seals testified that the condition of McConnell's memory was excellent, speaking without hesitancy, picking out precise words in a precise manner; that his mental condition was good.

Ray Harris, Cashier of the American National Bank, Rogers, testified that Mr. McConnell's mind was clear, that he discussed his affairs intelligently, that his memory was good, that he mentioned his relatives and was bitter toward his daughter, and that he wanted the Pates to get his property.

Mrs. Martha Hawkins, secretary to Mr. Claude Duty, attorney who prepared the will, testified that Mr. Duty dictated the will to her in his office in the presence of Mr. McConnell, that it was read aloud to Mr. McConnell, and that she and Mr. Duty signed as attesting witnesses. The Pates were present but offered no suggestions. By agreement it was stipulated that Mr. Claude Duty, attorney for Mr. McConnell, drafted the will and would testify that Mr. McConnell was of sound mind and acted without undue influence, fraud, or restraint.

In *Davault* v. *Parks,* 190 Ark. 370, 79 S. W. 2d 68, the Court quoted from *Alford* v. *Johnson,* 103 Ark. 236, 146 S. W. 516, as follows: "To establish a charge of fraud or undue influence in the execution of a will, it must be established: (1) That deception was practiced or influence exercised; (2) That the fraud or undue influence was effectual in misleading or coercing the testator in the execution of the will. The fraud or undue influence which is required to avoid a will must be direct-

ly connected with its execution and must be, not the legitimate influence which springs from natural affection, but the malign influence which springs from fear, coercion, or other causes that deprives the testator of freedom in the distribution of his property. Before a will can be invalidated upon the ground of undue influence, there must be testimony proving or tending to prove that the influence was of such character as to destroy the testator's free agency, in effect substituting another's will in the place of his own, and the influence must be directed toward the object of procuring a will in favor of particular parties. It is not sufficient that the testator was influenced by the beneficiaries in the ordinary affairs of life or that he was surrounded by them in confidential relations with them at the time of its execution.''

Affirmed.